IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLSTATE INSURANCE CO., INC          *

    Plaintiff          *

    vs.          * CIVIL ACTION NO. MJG-02-2983

                *

CHARLES W. HEMLER, et al.

                *

    Defendants
*     *     *     *     *     *     *     *     *

## MEMORANDUM AND ORDER

The Court has before it Plaintiff Allstate Insurance Company's Motion for Summary Judgment and the materials submitted by the parties in relation thereto.  The Court finds a hearing unnecessary.

I.   BACKGROUND[1]

The instant case involves a dispute over whether an insurance policy covers the costs of defending a lawsuit brought against policyholders Defendants Mary and Charles Hemler ("the Hemlers") and their daughter, Angela Pirzchalski ("Angela") in the Circuit Court for Baltimore County.  The lawsuit ("the Underlying Lawsuit"), which was brought by the Hemlers' former son-in-law, Steven Pirzchalski ("Pirzchalski"), alleges that during particularly bitterly

---

[1]    In the present context, the facts must be taken in the light most favorable to the Defendants.

contested divorce and custody proceedings between himself and Angela, the Hemlers conspired with Angela to publish false statements about Pirzchalski.  The Underlying Lawsuit presents claims against the Hemlers for defamation, intentional infliction of emotional distress, and civil conspiracy.[2]

Plaintiff Allstate Insurance Company ("Allstate") is the insurer of a Homeowner's Policy ("the Policy") covering the Hemlers.  Allstate filed the instant lawsuit in this Court requesting a Declaratory Judgment that it is not required, by the terms of the Policy, to provide a defense to the Hemlers in the Underlying Lawsuit, nor to indemnify the Hemlers for any judgment that may be entered against them in that case.

By its instant Motion, Allstate seeks Summary Judgment.


II.  <u>LEGAL STANDARD</u>

In deciding a summary judgment motion, the Court must look beyond the pleadings and determine whether there is a genuine need for trial.  <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether the

---

[2]     The lawsuit also presents claims against Angela Pirzchalski, which are not relevant to the instant case, as Angela is not covered by the Policy.

evidence is so one-sided that one party must prevail as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53 (1986).  If the defendant carries its burden by showing an absence of evidence to support a claim, the plaintiff must demonstrate that there is a genuine issue of material fact for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986).  The Court must look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses but must view it realistically.  Nevertheless, the non-movant is entitled to have all reasonable inferences drawn in his favor.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

An issue of fact must be both genuine and material in order to forestall summary judgment.  An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the plaintiff.  See Anderson, 477 U.S. at 248.  An issue of fact is material only if the establishment of that fact might affect the outcome of the lawsuit under governing substantive law.  See id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

III.     <u>DISCUSSION</u>

The Policy contains a provision for "Coverage X - Family Liability Protection."     The provision reads:

> Subject to the terms, conditions, and limitations of this Policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
>
> * * * *
>
> Losses We Do Not Cover Under Coverage X:
> 1.  We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
>     a.  Such insured person lacks the mental capacity to govern his or her conduct;
>     b.  Such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
>     c.  Such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

Policy at 19.  The Policy also defines "bodily injury" as "physical harm to the body, including sickness or disease, and resulting death," with various exclusions not here relevant; "occurrence" as "an accident... resulting in bodily injury or

4

property damage;" and "property damage" as "physical injury to
or destruction of tangible property...."  Policy at 2-3.

There are no facts in dispute.  Allstate argues that
pursuant to the plain Policy terms, it has no obligation to
defend the Underlying Lawsuit or to indemnify the Hemlers for
any damages they incur in relation thereto because the claims
presented in the Underlying Lawsuit are based on intentional
actions by the Hemlers, and are devoid of any claim for bodily
injury or property damage.

The Hemlers argue in their opposition that because they
could conceivably be found liable for defamation and
intentional infliction of emotional distress on the basis of
negligent, rather than intentional, actions, there is a
possibility that the claim could be covered by the policy, and
thus Allstate has a duty to provide a defense.

In Brown v. Transamerica Ins. Co., 347 A.2d 842, 849 (Md.
1975), the Maryland Court of Appeals stated:

> The obligation of an insurer to defend its
> insured under a contract provision... is
> determined by the allegations in the tort
> actions.  If the plaintiffs in the tort
> suits allege a claim covered by the policy,
> the insurer has a duty to defend.... Even
> if a tort plaintiff does not allege facts
> which clearly bring a claim within or
> without the policy coverage, the insurer
> still must defend if there is a

potentiality that the claim could be
covered by the policy.

Further, in the <u>Brown</u> case, the court held that a
declaratory judgment of noncoverage may not be granted to an
insurer when the issue to be determined with regard to
coverage is essentially the same issue as that to be
determined on the merits in the underlying tort case.  Hence,
as in <u>Brown</u>, where alternative causes of action based upon
negligent <u>and</u> intentional actions are asserted, a court should
not grant a declaratory judgment on the basis that only
intentional actions are implicated, as that would require
resolution of an issue material to the underlying case.

The instant case, however, does not present a situation
where alternative causes of action or alternative theories of
relief are asserted.  Further, the Policy does not cover the
type of damages for which Pirzchalski seeks to recover against
the Hemlers, and thus the suit does not fall within the
Policy's coverage guidelines, regardless of whether negligent
or intentional actions are implicated.

In the underlying Complaint, Pirzchalski alleges that the
Hemlers engaged in the following activities:

1.    In July of 1999, Mrs. Hemler stood outside
      Pirzchalski's home and made defamatory and
      disparaging comments concerning Pirzchalski.
      Circuit Court Complaint at ¶12;

6

2.    In December 1999, Mrs. Hemler published "disparaging and defamatory" statements concerning Pirzchalski to the Archdiocese of Baltimore.  Id at ¶22;

3.    Between December 1999 and April 2000, the Hemlers met with and communicated "disparaging and defamatory" statements to the Archdiocese of Baltimore.  Id at ¶23.

With regard to each of the allegations, the Complaint asserts "[s]aid statements were false and malicious, and made out of hatred, spite, ill will and with the <u>sole intent to injure</u> and damage Steven [Pirzchalski]."  Id. (emphasis added).  The Complaint further alleges that the Hemlers acted with "actual malice," that the statements were "calculated to injure Steven [Pirzchalski's] reputation," and that the Hemlers knew their statements were false or were reckless as to the falsity thereof.  Id.  The Complaint seeks recovery of damages for "damage to reputation in the community," loss of visitation privileges, humiliation, and "extreme anguish and mental suffering."  Id. at ¶¶ 33, 62, 67, 72, 77.

Allstate contends that the factual allegations of the Complaint clearly bring the claim "without" the policy requirements, and further that there is no claim or factual allegation within the underlying claim that could conceivably bring the claim within the policy requirements.  The Court agrees.

The Policy, by its express terms, provides indemnification only for claims against the insureds based on "occurances," which are defined as "accident[s]... resulting in bodily harm or property damage." Policy at 3. The acts asserted in the Underlying Lawsuit are neither accidents nor is any "bodily harm or property damage" alleged. The Policy definition of "bodily harm" is unambiguous and cannot be reasonably read to include the type of harm – injury to reputation, mental anguish, and the like – alleged in the underlying lawsuit. The definition of "property damage" limits coverage to claims based on harm to "tangible" property, which also cannot reasonably be interpreted to include the type of damage alleged in the underlying suit. On this basis, it is clear that the Policy does not – and does not "potentially" – cover the claims stated in the underlying suit.

Allstate further argues that because the lawsuit alleges only "intentional" acts by the Hemlers, it does not fall within the Policy coverage, as the Policy specifically includes only "accidental" occurrences and excludes damages "which may reasonably be expected to result from the intentional or criminal acts... of any insured person." Policy at 19.

8

Defendants argue that because there exists a theoretical possibility that defamation and intentional infliction of emotional distress can be premised on reckless or negligent conduct, they are entitled to a defense in the underlying litigation.

Because, as previously discussed, the harm alleged is such that the claims clearly fall outside of the Policy's coverage, the Court need not decide the issue of whether liability in the underlying case resulted from negligent as opposed to intentional actions.  The Court notes, however, that any "potentiality" that the Hemlers could be found liable in the Underlying Lawsuit for negligent actions is remote at best.  The underlying Complaint does not state any claim or allege any facts related to negligent acts.  Rather, the Complaint is clear that the relief sought is for the intentional, malicious actions of the Hemlers.

Second, to the extent that the Hemlers could conceivably found liable on the basis that their statements were made with reckless disregard or negligent disregard for the truth, the Policy language precludes coverage as well, under the exclusion for damages "reasonably expected" to result from the intentional acts of the insured.

9

IV.    <u>CONCLUSION</u>

For the foregoing reasons:

1.    Plaintiff Allstate Insurance Company's Motion for Summary Judgment shall be GRANTED.

2.    The Court shall enter a separate Judgment Order declaring that Plaintiff Allstate shall not be responsible to indemnify nor to provide a defense to Defendants Charles W. and Mary V. Hemler in the Circuit Court of Baltimore County, Case No. 03-C-7268.

SO ORDERED, on <u>Thursday, 5 June,  2003</u>.

_____/ s /_____
Marvin J. Garbis
United States District Judge